## In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| James D. Scott, #269988, | ) | Civil Action No. 9:06-1353-HFF-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Jon Ozmint, SCDC Director; Lloyd | ) | |
| Roberts, Chief of Pastoral Care Services | ) | |
| Branch of SCDC; and Allen Edmstein, | ) | |
| Chaplin at McCormick Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

The *pro se* Plaintiff, James D. Scott ("Plaintiff" or "Scott"), an inmate incarcerated in the South Carolina Department of Corrections' ("SCDC's") McCormick Correctional Institution ("MCI"), has filed suit pursuant to Title 42, United States Code Section 1983, alleging that the defendants have discriminated against him because they have refused to recognize the "Neterian Faith" as a religion.[1]  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

---

[1]    *See* Complaint [1-1] at p. 3.

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

    *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. at 8.  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  PROCEDURAL HISTORY IN FEDERAL COURT

    The Plaintiff commenced this Section 1983 action on April 26, 2006[2] against the defendants Jon Ozmint, SCDC Director ("Director Ozmint"), Lloyd Roberts, Chief of Pastoral

---

[2]    Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint.  *See* this court's Order [4-1] at p. 1.

Care Services Branch of SCDC ("Chaplain Roberts"),[3] and Allen Edmisten, Chaplain at McCormick Correctional Institution ("Chaplain Edmisten").[4]  Plaintiff seeks an injunction ordering the Defendants to recognize the Neterian Religion as a religion protected under the First and Fourteenth Amendments.  Plaintiff also seeks reimbursement of his court fees and any other relief the Court deems necessary.

On May 25, 2006, the Defendants filed an Answer to the Complaint.  [7-1]  On May 30, 2006, Plaintiff filed a motion to amend his complaint in order to correct the name of one of the Chaplains; this motion was granted on May 30, 2006.  [11-1; 12-1]  On June 21, 2006, Plaintiff filed his amended complaint and an answer to the amended complaint was filed by the Defendants on June 23, 2006.  [17-1; 18-1]  On August 4, 2006, the Defendants filed a Motion for Summary Judgment and a supporting Memorandum.  [24-1; 24-2]

On August 8, 2006, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' Motion, the summary dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days.  [26-1]

On August 28, 2006, Plaintiff filed a Reply to Defendants' Motion for Summary Judgment.  [27-1]  On September 5, 2006, Defendants followed with a Response to Plaintiff's Reply, and Plaintiff, on September 22, 2006, filed his Response to the Defendants' Reply. [28-1; 30-1]

---

[3]    Chaplain Roberts initially was mis-identified in the Complaint as Robert Lloyd.  Subsequently, Plaintiff filed an Amended Complaint to correctly identify this defendant.

[4]    Allen Edmisten is mistakenly referred to by the Plaintiff as Allen "Edmstein".  The court will use the correct spelling of Mr. Edmisten's name.  *See* Affidavit of Allen Edmisten, attached at [24-3].

## IV.  THE STANDARD FOR DETERMINING A
## MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*,  818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence.  The nonmoving party, then, must then go

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## V.  DISCUSSION

### A.  The Prison Litigation Reform Act

#### 1.  Whether Plaintiff Has Exhausted all Available Administrative Remedies

The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a).  The United States Supreme Court stated "[t]here is no doubt that the PLRA's exhaustion requirement is mandatory."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Plaintiff has the burden of demonstrating that he has exhausted the prison grievance procedure or that administrative remedies were unavailable with respect to his claim before the date of filing his action under 42 U.S. C. § 1983.  *See Brown v Tombs*, 139 F.3d 1002, 1004 (6th Cir. 1998), *cert. denied*, 525 U.S. 833 (1998).  This court's review of the record indicates that Plaintiff has exhausted his available administrative remedies; the final SCDC decision with respect to his grievance was issued on April 10, 2006.  Accordingly, Plaintiff's action is properly before the court.

#### 2.  Whether Plaintiff Has Suffered Physical Injury

Notwithstanding the foregoing, however, the Defendants contend that the Plaintiff's claims cannot be maintained due to the express language of the Prison Litigation Reform Act. *See* 42 U.S.C. §1997(e).  Section 1997(e) states that, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. §1997(e)(a). The Plaintiff has failed to point to any physical injury which he has suffered as a result of the Defendants' actions or inactions.  In this situation, where the Plaintiff has failed to show any type

of physical injury as a result of the actions of the Defendants, he is unable to maintain the present action.  Because the Plaintiff has failed to allege, or show any physical injury as a result of the conditions alleged in his Complaint, it is recommended that the Plaintiff's action be dismissed pursuant to the Prison Litigation Reform Act.

### B.  Plaintiff's action against Ozmint should be dismissed because the Complaint fails to state a claim against Ozmint upon which relief can be granted.

Even if Plaintiff had shown physical injury, he still cannot succeed in this action.  Rule 8 of the Federal Rules of Civil Procedure states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]"  *See* Fed.R.Civ.Proc. 8(a); *see also Roth v. United States*, 952 F.2d 611 (1st Cir. 1991) ("a plaintiff is obligated to set forth in her complaint 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' ").  In the present case, the Plaintiff has failed to assert facts upon which relief may be granted against Director Ozmint.  The Plaintiff is required to make a short, plain statement sufficient to put Director Ozmint on notice of the claims against him.  The Plaintiff, in his Amended Complaint, states only that he is suing Director Ozmint in his official capacity because the remaining Defendants are "employed by him."  The Plaintiff makes no other allegations of any kind against Director Ozmint in his Amended Complaint and does not even mention him by name other than this one occasion.

The Plaintiff in this case has failed to satisfy the requirements of Rule 8 because he has failed to make specific allegations as to how Director Ozmint violated his rights.  In order to prevail, the Plaintiff must prove that the specific prison official was deliberately indifferent to the requirements of the Eighth Amendment and that this indifference was the proximate cause of the Plaintiff's right to be free from cruel and unusual punishment.  *See Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988).  While it is true that the Plaintiff's Complaint must be viewed more liberally because the Plaintiff is proceeding *pro se*, case law requires that the language of Rule 8 cannot be

disregarded.  Even construing the Plaintiff's Complaint liberally as the court must do in this case, the Plaintiff has failed to set forth sufficient allegations to state any claim against Director Ozmint.  Therefore, it is recommended that his action against Director Ozmint should be dismissed pursuant to Rule 12(b)(6).

### C.  Plaintiff's action against the Defendant Ozmint, who is sued only in his official capacity, should be dismissed because, in that capacity, he is not a "person" amenable to suit under Section 1983

Defendant Director Ozmint also argues, correctly, that the action against him should be dismissed as a matter of law to the extent he is being sued in his official capacity, because while acting in their official capacity he is not a "person" under 42 U.S.C. §1983 and, therefore, they are not subject to suit.   The Plaintiff in both his Complaint and Amended Complaint states that he is suing Ozmint only in his official capacity.[5]  Therefore, it is recommended that Director Ozmint be dismissed entirely as a matter of law.

Furthermore, even though Plaintiff has sued Chaplain Roberts and Chaplain Edmisten in their individual capacities, Plaintiff does not appear to allege that the Chaplains have acted individually, but only in their official capacities as chaplains employed by the South Carolina Department of Corrections.  To the extent that they are sued in their official capacities, they are to be treated as the State of South of Carolina and are not subject to suit.  The United States Supreme Court held that "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."  *Hafer v. Melo*, 116 L.E.2d 301, 310 (1991); *see also Weller v. Department of Social Services for Baltimore*, 901 F.2d 387 (4th Cir. 1990) (a "suit against the state officials acting in their official capacities is a suit against the State").  The language set forth by the

---

[5]     *See* Complaint [1-1] at p. 4; Amended Complaint [17-1] at p. 3.  Plaintiff specifically states that both Chaplain Roberts and Chaplain Edmisten are sued in both their individual and official capacities.  *Id.*

Supreme Court in *Hafer* is clear and the action against the Defendant Chaplains should be dismissed to the extent that they are sued in their official capacities.

### D.  Plaintiff's action should be dismissed as he has failed to state a claim pursuant to 42 U.S.C. § 1983

The Plaintiff alleges in his complaint that Defendants have prevented him from practicing his religion because SCDC has refused to recognize his religion of Neterianism.  The Defendants have submitted the affidavits of Chaplain Allen Edmisten and Chaplain Lloyd Roberts with their Memorandum.  Chaplain Edmisten has been an ordained minister for over 23 years and is the Chaplain at the McCormick Correctional Institution.  Chaplain Roberts is also an ordained minister and is the acting head Chaplain for SCDC.  Chaplain Edmisten stated that he first received Requests to Staff from the Plaintiff and two other inmates, Roosevelt Hankins and Davis Dexter, on or about October 13, 2005.  The Plaintiff at that time requested to have his faith group recognized by SCDC.  He also set forth in his request several items which he stated would be needed for his faith.

Chaplain Edmisten met with the Plaintiff shortly after October 13th and told him that he was completely unfamiliar with the Neterian faith and asked him to provide him with as much information as possible.  The Plaintiff then brought him a book on yoga entitled Initiation Into Egyptian Yoga.  The book contained one chapter which dealt with the Neterian faith.  The book was not a book specifically on Neterianism or the Neterian faith, but instead was a book on yoga which contained a chapter dealing with Neterianism.  The Plaintiff did not have any additional information to provide to Chaplain Edmisten.

Chaplain Edmisten forwarded a letter to Chaplain Roberts on October 17, 2005, providing him all information which he had been provided by the Plaintiff.  Chaplain Edmisten followed SCDC policy by discussing this matter with the Associate Warden and forwarding all the information to the SCDC Head Chaplain for review. (Aff. Edmisten).

The Plaintiff sent Chaplain Edmisten a second request on November 28, 2005 to enquire as to the status of his request.  Chaplain Edmisten responded to the Plaintiff's Request to Staff by asking Plaintiff to meet with him on December 20, 2005 to discuss the matter.  The Chaplain's response acted as an Order to Report.[6]  Chaplain Edmisten also met with the Plaintiff on other occasions where the Plaintiff would show up without an Order to Report to discuss the status of his request.  Although this is a violation of SCDC policy for being out of place, Chaplain Edmisten did not initiate any charges against the Plaintiff for these violations, but spoke with him on these occasions and informed him that he had forwarded the information to the appropriate individual and was awaiting response.

Chaplain Edmisten met with the Plaintiff on December 20, 2005.  Chaplain Roberts had previously asked for contact information for any person or group in South Carolina who practiced Neterianism, and the Plaintiff told him about the Newkemet Shule Institute in Florence, South Carolina.  As with all information he had obtained from the Plaintiff, Chaplain Edmisten passed this information along to Chaplain Roberts.[7]

Chaplain Edmisten next received a Request to Staff from the Plaintiff on January 18, 2006, again requesting an update on the status of his prior request concerning recognition of the Neterian faith.  Chaplain Edmisten again responded to the Plaintiff's request informing the Plaintiff that pursuant to SCDC policy, he had notified the Associate Warden of the Plaintiff's request and had relayed all information he had received from the Plaintiff to acting head Chaplain Roberts.  He noted specifically that he had most recently provided contact information for Muate Ashby to Chaplain Roberts after their December 20, 2005 meeting.  He told Plaintiff that he would let him know about any developments as soon as they occurred.  Chaplain Edmisten spoke with Chaplain Roberts on multiple occasions and Chaplain Roberts informed him that he was

---

[6]        *See* Edmisten Affidavit [23-4] at p. 3.

[7]        *Id.*

checking into this matter.[8]  Chaplain Roberts stated that he, as had Chaplain Edmisten, had never

heard of the Neterian faith though he had been an ordained minister for many years.  He reviewed

the information which the Plaintiff had provided to Chaplain Edmisten and in addition obtained

information which he was able to locate on the internet concerning the Neterian faith.  Chaplain

Roberts also stated that he attempted on a number of occasions to contact the Temple in Florence,

but was unable to reach anyone.  Finally, he was able to speak with someone at the Temple,

explained to them who he was and why he was calling, and stated he needed to speak with the

head of the Temple concerning this matter.  He explained that an inmate wanted to have SCDC

recognize the Neterian faith and he needed information on same.  Chaplain Roberts provided

them his name and phone number and even stated he would be willing to go to Florence to meet

with someone, but no one ever called him back concerning this matter.  Though no one would

return his call, he tried on numerous additional times to contact individuals at the Temple, but

received no answer and was unable to contact anyone.  Other than the information from the

Plaintiff, he was only able to locate a small amount of information on the internet which is

essentially what had been provided by the Plaintiff.[9]

Both Chaplain Edmisten and Chaplain Roberts stated that under SCDC policy, inmates

who are seeking to have a faith recognized by SCDC are to provide SCDC with official written

information about the beliefs of the faith and the practices that are requested, including meeting

times, holy days, worship needs, religious education needs, worship symbols, and any special

practices or observances that require physical participation or special equipment.  Although

Plaintiff did provide some information which had the basic concepts of Neterianism, he did not

specifically provide the information that was requested.  The Plaintiff did put in his Requests to

---

[8]       *See* Edmisten Affidavit at p. 4.

[9]       *See* Edmisten Affidavit and Roberts Affidavit.

Staff certain items which he stated would be required for religious services, but this was not considered official written information as it was a handwritten statement by the Plaintiff. Furthermore, as stated above, Chaplain Roberts was unable to find any additional information concerning the Neterian faith other than that provided by the Plaintiff. In addition to searching the internet, he again attempted to contact the Temple in Florence, but was unsuccessful.[10]

Chaplain Roberts met with the Plaintiff on December 21, 2005 to discuss his request to have the Neterian faith recognized by SCDC. Chaplain Edmisten was also present during this meeting. Chaplain Roberts informed the Plaintiff that he had not been able to contact anyone in the Florence Temple and he was unable to locate any additional information concerning the Neterian faith. He also questioned the Plaintiff as to his stated religious preference upon his admission to SCDC. The Plaintiff acknowledged that he had not stated he was a Neterian and that also the other two individuals, inmates Hankins and Dexter, had not listed themselves as not being Neterian. He also acknowledged that he had prepared the Requests to Staff sent to Chaplain Edmisten on October 13, 2005 by inmates Hankins and Dexter.

Chaplain Roberts informed the Plaintiff that SCDC did not have enough information to recognize the Neterian faith. By affidavit, Chaplain Roberts has explained that he had not received information from the Plaintiff and had not been able to locate information concerning the basic tenants and requirements of the Neterian faith as required under SCDC policy, he had been unable to contact an outside individual to provide any assistance to the inmates in their worship services, and further that none of the inmates had stated their religious preference as Neterian.

On or about March 7, 2006, the Plaintiff later submitted a Request to Change his religious preference. Chaplain Roberts stated that he does not make the decision whether or not a Faith group is recognized. Instead, his role is to gathers and review the information and forward it to

---

[10] *See* Edmisten Affidavit and Roberts Affidavit.

the appropriate individuals at SCDC who makes the final decision.  He informed the Plaintiff that he simply did not have enough information and did not have enough information required by SCDC policy.  The Plaintiff stated that Chaplain Roberts could ask the Plaintiff any questions he had, but this would not be an official source such as published literature or an official representative of the Neterian Faith Group.  He did, however, ask the Plaintiff what was required or how a person became a Neterian and the Plaintiff was unable to answer his question.[11]

Chaplain Roberts informed the Plaintiff that though SCDC did not have sufficient information to recognize the Neterian faith as an approved group religion, SCDC would not attempt to regulate his individual beliefs and that he could continue to practice his religion individually, although he would not be able to have group meetings.  Both Chaplain Edmisten and Chaplain Roberts stated that based on the limited information they have been able to obtain and on the information obtained from the Plaintiff that it was their opinion that the Plaintiff should be able to practice his faith without group worship or a study group.  The only thing the Plaintiff would be unable to do would be to have a study group, but, significantly, Plaintiff would be able to continue to practice and follow his faith.[12]

Chaplain Roberts stated in his affidavit that there were also considerations concerning the impact of accommodation on the allocation of prison resources.  There were only three inmates known within SCDC who had stated that they wish to practice the Neterian faith.  These inmates had previously stated that they were members of other religions and had made no change on their stated religious preference.  If the Plaintiff's faith group was officially recognized under the requirements he set forth in his Request to Staff, he would be allowed two meetings per week of an hour and a half each plus other items.  For each meeting, they would be required to have a room where the inmates would be allowed to meet and staff would be required to provide security

---

[11]        *See* Edmisten Affidavit at p. 6 and Roberts Affidavit at p. 4.

[12]        *Id.*

for these meetings.  As the Plaintiff had failed to provide the information required by SCDC policy, Chaplain Roberts had been unable to contact the individuals provided by the Plaintiff or to locate any additional information concerning the faith, as the Plaintiff and other two inmates had stated a religious preference different than the Neterianism, as there were only a total of three inmates in SCDC requesting this recognition, and finally that the Plaintiff would be able to practice his faith individually and would not be hindered from doing so by not recognizing the faith officially, SCDC declined to recognize the Neterian faith as an official religion at this time.[13]

Chaplain Edmisten stated that on April 10, 2006, he visited a Buddhist study group at McCormick Correctional Institution.  He stated in his affidavit that this is part of his job as Chaplain to help monitor some of these religious group meetings.  The Buddhists were having a study group and when he entered the room, he noted that there were two separate and distinct groups in the room: one group of individuals were sitting around playing games, talking, or looking at photographs; another group of several inmates, including the Plaintiff, were separate from the other inmates in the room.  The Plaintiff and the other inmates with him were all wearing identical necklaces and were studying from books concerning Shetaut Neter.  The Plaintiff stated that they were studying Buddhism, but the materials they had dealt with Neterianism and had nothing to do with Buddhism.  Chaplain Edmisten stated that he could have confiscated the books that the Plaintiff had as they would have been considered contraband at that point, but did not do so as he did not want to interfere with their individual practice of their faith.  After this point, Chaplain Edmisten discontinued the Buddhist study groups.  He stated that from a review of SCDC records, there were no inmates at MCCI who claim to be Buddhist and the inmates at the study group were not studying Buddhism when he entered the room.  The Plaintiff subsequently filed a grievance against Chaplain Edmisten concerning his entry into the Buddhist study group.[14]

---

[13]     *Id.*

[14]     *See* Edmisten Affidavit at ¶ 6-7.

Both Chaplain Edmisten and Chaplain Roberts stated that they are familiar with the Buddhist faith.  Both stated that Buddhism and Neterianism are dissimilar and it would not be possible for an individual who adhered to one faith but practice both faiths.  Buddhists follow the teachings of Buddha and Neterians follow the teachings of Shetaut Neter.  It should further be noted that when the Plaintiff was admitted to SCDC he claimed his religious preference to be Muslim.[15]  Both Chaplain Edmisten and Chaplain Roberts stated that they are also familiar with the Muslim religion.  They both stated that the Muslim religion and Neterian faith are different; for example, the Muslim faith has one god and Neterianism has many.  An individual could not practice and adhere to the tenants of the Muslim faith and also that of the Neterian faith.[16]

The Plaintiff has failed to show that Defendants' actions were unconstitutional in denying his request for recognition of the Neterian faith.  First, based on the affidavits from the Defendants, Plaintiff failed to provide sufficient information, as required pursuant to SCDC policy, in order to have his faith recognized.  As discussed above, SCDC policy requires that an inmate requesting to have his faith recognized by SCDC provide official written information about the beliefs of the faith and the practices that are requested, including meeting times, holy days, worship needs, religious education needs, religious symbols, and any special practices or observances that require physical participation or special equipment.  The Plaintiff failed to provide this information.  Chaplain Roberts stated that he reviewed the information from the Plaintiff and searched the internet to attempt to locate additional information concerning the Neterian faith.  In addition, he attempted to contact the Temple in Florence the name of which was provided by the Plaintiff, but was unsuccessful despite multiple attempts.  The Plaintiff's failure to provide the information required under SCDC policy was the primary basis for the

---

[15]     It is interesting to note that in a Request to Staff written by the Plaintiff in November 2000 he stated he was a Christian and in another Request to Staff in February 2002, the Plaintiff stated he was a Muslim.

[16]     *See* Edmisten Affidavit at ¶ 7-8 and Roberts Affidavit at p. 6.

decision of Chaplain Roberts in this matter.  Chaplain Edmisten stated that he did not make the decision to recognize or not recognize the Neterian faith and does not have authority to make this decision, but he provided the information to the Associate Warden and to Chaplain Roberts as required under SCDC policy.  Both Chaplain Edmisten and Chaplain Roberts stated that based on the information they have, it appears that the Plaintiff should be able to practice his faith individually even though the Neterian faith has not been officially recognized.  Based on these facts, the Plaintiff has failed to show a constitutional violation.[17]

   This court's review of all of the facts indicates that the Defendants' decision should be upheld as it was reasonably related to a legitimate penalogical interest.  The United States Supreme Court stated that a prison regulation will be upheld if it is "reasonably related to legitimate penalogical interest."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The Court in *Turner* set forth a four-prong test to determine this question: "(1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation."  *Id*. at 89-91.  The Fifth Circuit Court of Appeals has further interpreted the Supreme Court's decision in *Turner* stating that a court need not weigh evenly, or even consider, each of the factors, as rationality is the controlling standard.  *See Freeman vs. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).  In the present case, there is a rational relationship between the regulation and the legitimate government interest advanced.  Moreover, the regulation was also applied properly in this action.  When considering the requirements set forth by the Court in *Turner*, it is apparent that the Plaintiff has alternative means of exercising his right.  As stated by both Chaplain Edmisten and Chaplain Roberts, based on the information provided them concerning the Neterian faith, the Plaintiff could

---

[17]  *Id.*

continue to individually practice his faith even though Neterianism was not officially recognized by SCDC.  The Plaintiff had an alternative means to exercise his rights by continuing to practice his faith individually.  Also, as discussed in the Affidavits, the impact of accommodation on prison staff and the allocation of prison resources generally was a consideration.  As shown in Chaplain Roberts' affidavit, there were only three inmates in SCDC who asked to have the Neterian faith recognized.  They sought to have two meetings per week of ninety (90) minutes each, which would require SCDC to locate a room for them on these occasions and provide security for these meetings.  Accommodating these three individuals would present a burden on SCDC resources.  Finally, there is the question regarding the existence of a rational relationship between the regulation and the legitimate government interest advanced.  Clearly, the SCDC regulation is in place to provide a basis to review requests by inmates to recognize a specific faith. The staff and space limitations, as well as the financial burden, are legitimate penalogical interests.

The Supreme Court has also addressed a somewhat similar issue in a different context. See *Cruz v. Beto*, 405 U.S. 319 (1972).  In *Cruz*, the plaintiff sued the defendants alleging numerous grounds, including that the defendants refused to allow Buddhists the right to hold religious services.  The Court reversed the granting of a motion pursuant to Rule 12(b) dismissing the plaintiff's case, but specifically noted that:

> We do not suggest of course that every religious sect or group within a prison – however few in number – must have identical facilities or personnel.  A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.  But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.  *Cruz*, 405 U.S. at 322, note 2.

The Court's statement, set forth above, is particularly pertinent in the present action.  The Court clearly states that every religious group within a prison, however few in number, such as in the present action, is not required to have a special place of worship.  Instead, the crucial issue is

whether the inmate has a reasonable opportunity to exercise religious freedom without fear of penalty.  The Plaintiff is allowed to practice his religion individually without fear of reprisal of any kind.  The Plaintiff simply is not allowed to meet with others to practice his religion, but again, as stated by Chaplains Edmisten and Roberts, the Plaintiff can practice his faith individually.

In *Turner*, the Court noted that prison officials do not "have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 42 U.S. at 90-91.  In the present case, the Defendants have satisfied the criteria set forth under *Turner*, and the court finds that the Defendant Chaplains did not act in contravention of Plaintiff's constitutional right to practice his Neterian faith.

## E.  The Defendants are entitled to qualified immunity from suit in this case because their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known

Even if the Defendants were held to have violated the Plaintiff's constitutional or statutory rights (which this court does not find), the Defendants nonetheless are entitled to qualified immunity from suit.  The Fourth Circuit Court of appeal stated that "[g]overnment officials who are performing their official duties are generally shielded from liability for civil damages." *Swanson v. Powers*, 937 F.2d 965, 967 (4th Cir. 1991); *cert. den.* 112 S.Ct. 871, *citing Harlow v. Fitzgerald*, 457 U.S. 800).  The doctrine of qualified immunity is "designed to shield officials not only from ultimate liability but also from the hardships of litigation itself, 'the immunity shield is necessarily more protective than is the defense on the merits.'"  *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).  The Fourth Circuit Court of Appeals more recently stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In determining whether the specific right allegedly violated was 'clearly established', the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.  Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a 'legitimate question'

as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Wiley vs. Doory*, 14 F.3d 993 (4th Cir. 1994) (Internal citations omitted); cert. den. 516 U.S. 824 (1995).

The Fourth Circuit Court of Appeals stated that "a court must first ask the legal question whether the plaintiffs have alleged a violation of clearly established law of which a reasonable official should have known; summary judgment must be granted if they have not." *Lopez v. Robinson*, 914 F.2d 486, 489 (4th Cir. 1990). If the plaintiff has sufficiently alleged a violation, then the court must review the record to determine if the defendant's conduct violated a clearly established substantive right of which a reasonable official should have known. The Court in *Lopez* stated that "[t]he qualified immunity defense from §1983 damages claims is more than merely a defense from liability; it is an 'entitlement not to stand trial or face the other burdens of litigation' that would be 'effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 489, *quoting Mitchell v. Forsyth*, 472 U.S. 511 (1958).

The Defendants in this case have not violated any clearly established constitutional rights of the Plaintiff of which they should have been aware. First, as to Defendant Ozmint, the Plaintiff makes no allegation other than the fact that the other individuals are employed by him. As the Plaintiff has failed to point to any specific act undertaken by Defendant Ozmint, there is clearly no violation of a clearly established constitutional right of the Plaintiff on his part of which Ozmint should have been aware. Second, the Plaintiff has also failed to show that Chaplain Edmisten has violated any clearly established constitutional right. Chaplain Edmisten stated in his Affidavit that after receiving the Request to Staff from the Plaintiff, he met with the Plaintiff, gathered information from the Plaintiff, spoke with the Associate Warden, and forwarded the information to Chaplain Roberts. He followed SCDC policy in obtaining the information and forwarding it to the appropriate individuals who would render a decision concerning the Plaintiff's request. Chaplain Edmisten followed SCDC procedure and cannot be viewed as violating any established constitutional right of the Plaintiff of which he should have been aware.

Finally, the Plaintiff has also failed to show that Defendant Roberts violated any clearly established constitutional right of the Plaintiff of which a reasonable official in his position should have been aware.  Chaplain Roberts stated that he reviewed the information from the Plaintiff which did not comply with the requirements set forth under SCDC policy and he searched the internet in an attempt to locate additional information concerning the Plaintiff's faith.  He also attempted to contact the Temple in Florence whose name was provided him by the Plaintiff, but he was unsuccessful in any of these attempts to obtain the information required by SCDC policy.  He also checked and found that the Plaintiff and other two inmates, for who the Plaintiff admittedly wrote Requests to Staff requesting the recognition of the Neterian faith, had all listed other religions under their religious preference when admitted to SCDC.  He informed the Plaintiff he did not have sufficient facts to recognize the Neterian Faith.  He also stated that the Plaintiff would not be prohibited from practicing his religion, but would be able to practice his religion even if it was not officially recognized by SCDC.  The Plaintiff has failed to satisfy the first prong of the test concerning qualified immunity because he has failed to show there was a violation of a clearly established right.  As the Plaintiff has shown no violation of a clearly established right, the Defendants are entitled to qualified immunity and the Plaintiff's action should be dismissed as a matter of law.

### F.  Defendant Ozmint cannot be held liable as a matter of law in any supervisory capacity for any acts of others over which he had no control

The Fourth Circuit Court of Appeals stated that liability under Section 1983 cannot be premised on the doctrine of *respondeat superior*. *See Ross v. Reed*, 719 F.2d 689 (4th Cir. 1983). Supervisory liability "is not premised upon *respondeat superior* but upon a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *cert. den.* 115 S.Ct. 67 (quoting *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  The Fourth Circuit Court of Appeals also stated that the plaintiff

assumes a heavy burden of proof in order to establish supervisory liability. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984); cert. den. 470 U.S. 1035. The Court in *Slakan* stated that "[h]e not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan*, 737 F.2d at 373.

The Fourth Circuit has held that there are three elements necessary to establish supervisory liability under Section 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was in engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Miltier v. Beorne*, 896 F.2d 848 (4th Cir. 1990)) (further citation omitted).

The Court then went on to address each of these elements. The Court stated that to satisfy the first element, a plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799. To establish a pervasive and unreasonable risk of harm, there must be evidence that the conduct was widespread or at least occurred on several different occasions and that the conduct engaged in by the subordinate posed an unreasonable risk of harm. To satisfy the second element, the Court stated that a plaintiff may establish deliberate indifference by showing "a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Shaw*, 13 F.3d at 799, *quoting Miltier v. Beorne*, 896 F.2d 848 (4th Cir. 1990) (further citations omitted). The Court went on to state:

> The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because: [o]rdinarily, the [plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. . .

. A supervisor's continued inaction in the face of documented wide-spread abuses,
however, provides an independent basis for finding he either was deliberately indifferent or
acquiesced in the constitutionally offensive conduct of his subordinate.  13 F.3d at 799.

The Court also addressed the final element of causation.  The Court stated that causation was

established when the plaintiff demonstrated an affirmative causal link between the supervisor's

inaction and the harm suffered by the plaintiff.

The Plaintiff in his claim has failed to establish the three elements set forth above as to the

Defendant Ozmint, who is the Director of SCDC and is responsible for the overall operation of all

Institutions within the state.  Ozmint further stated that he maintains his office in Columbia and

does not work at MCCI.  Defendant Ozmint stated that he does not have specific information and

has no first hand knowledge concerning the incidents alleged by the Plaintiff in his Complaint.

Furthermore, the Plaintiff makes no allegations against him except that he is employer of other

Defendants.  The Plaintiff has failed to satisfy the first element because he has failed to make any

allegations against Defendant Ozmint.  The Plaintiff has also failed to satisfy the second element

which is necessary to establish supervisory liability in that he has failed to show that Defendant

Ozmint acted with deliberate indifference.  Again, the Plaintiff has made no allegations against

Defendant Ozmint in the body of the Complaint.  As Plaintiff has made no allegations against

Defendant Ozmint, there are no allegations which could rise to the level of deliberate

indifference.  Finally, the Plaintiff has failed to establish a "affirmative causal link" between the

actions of Defendant Ozmint and the constitutional deprivations allegedly suffered by the

Plaintiff.  The Plaintiff has failed to point to any specific act undertaken or failed to be undertaken

by this Defendant which caused the constitutional deprivation he claims to have suffered.  The

Plaintiff fails to make any specific allegations that Defendant Ozmint had knowledge of the

situations in his Complaint and the Plaintiff has failed to show an "affirmative causal link

between their actions and his alleged constitutional violation.  Because the Plaintiff has failed to

satisfy any of the three elements necessary to establish supervisory liability, the action against

Defendant Ozmint should be dismissed as a matter of law.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that the **Defendants' Motion for Summary**

**Judgment [24-1] be granted.**


GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE


November 21, 2006

Charleston, South Carolina

## <u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"<br/>& The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate**

**judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

**Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("Plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
